IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RODNEY ALVERSON, #132431, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:18-CV-61-MHT |
| ) | |
| LORENZO MILLS, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENTION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is currently pending before the court on a complaint filed by Rodney Alverson, an indigent state inmate currently incarcerated at Easterling Correctional Facility.  In the instant complaint, Alverson, a frequent federal litigant, challenges the constitutionality of his transfer to Easterling as retaliation for his legal activities.

On March 13, 2018, Alverson filed a motion for preliminary injunction requesting prompt employment in the furniture plant operated by the Alabama Department of Corrections in Elmore, Alabama and transfer from Easterling to a facility which would allow him the opportunity to work at the furniture plant.  Doc. 14 at 2.  Alverson filed a second motion for preliminary injunction on March 23, 2018 in which he challenges the lack of security at Easterling and seeks issuance of an order requiring defendant Jefferson Dunn, Commissioner of the Alabama Department of Corrections, to immediately reduce

the number of inmates in each dorm at Easterling and hire additional correctional officers.  Doc. 16 at 1-2.

The court entered orders directing the defendants to show cause why Alverson's motions for preliminary injunctive relief should not be granted.  Docs. 15 & 17.  The defendants filed responses to Alverson's motions on April 30, 2018.  Docs. 35 & 36.  These responses are supported by evidentiary materials attached to the defendants' special report and defendant Dunn's response.  Docs. 34-1 through 34-7 & 36-1.

Upon review of the motions for preliminary injunction filed by the plaintiff, the defendants' responses thereto and well-settled law, the court concludes that these motions are due to be denied.

## II.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).  This court may grant a preliminary injunction only if Alverson meets each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.* at 1329; *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th

Cir. 1983). "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's*, 147 F.3d at 1306 (internal quotation marks omitted) (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)); *see Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (holding that a grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's request for injunctive relief, regardless of the party's ability to establish any of the other requisite elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

### III.  DISCUSSION

In their responses to the motions for preliminary injunction, the defendants deny any violation of Alverson's constitutional rights with respect to either his transfer to Easterling or the conditions at this facility. Defendant Brittny Bates, a classification

supervisor, addresses Alverson's first motion for preliminary injunction challenging his transfer to Easterling, in pertinent part, as follows:

> [Due to the imminent closure of Draper Correctional Center], transfer orders were generated via Transfer Agents and Movement Orders at Draper . . . were created accordingly. Due to a risk of breach in the safety and security of any given facility within the Alabama Department of Corrections, under no circumstances is any inmate ever apprised of a pending transfer to another facility.
>
> . . .
>
> Inmate Alverson[] was transferred to Easterling Correctional Facility due to that facility being an approved, enemy free facility with available bed space. Inmate Alverson was transferred to Easterling Correctional Facility on January 26, 2018 along with other inmates via Transfer Agents per [orders of] Institutional Coordinators. Strict criteria was used to screen each inmate before any transport occurred to another facility. Retaliation, as stated by Inmate Alverson was not a guideline nor criteria for transfer to Easterling Correctional Facility from Draper Correctional Facility due to [Draper's] imminent closure.
>
> . . . Inmate Alverson's transfer to Easterling was not a form of punishment but occurred due to the imminent closure of Draper Correctional Facility.

Doc. 34-1 at 2-4.

Additionally, defendant Amy Davenport, another classification specialist, avers that:

> . . . [D]ue to the imminent closure of Draper Correctional Facility, transfer of Inmate Alverson to Easterling Correctional Facility occurred on 01/26/2018. In order for Inmate Alverson to be properly transferred to another approved facility, factors such as [security level,] Health Codes, Mental Health Codes and Enemy locations had to be verified. Bed space at approved facilities had to be secured in order to transfer Inmate Alverson, along with several hundred other inmates, away from Draper Correctional Facility. Transfer of Inmate Alverson was coordinated between the Institutional Coordinators and Transfer Agents.

4

. . .

. . . [As of March 1, 2018, a search of Inmate Alverson's inmate file for a transfer request yielded] no such request. . . .  Per the ADOC Male Classification Manual, Revised January 2018, . . ., an inmate can request to transfer to another facility in order to complete a specific program or to move to a facility that is closer to home.  It should be noted that in order for an inmate to be transferred to another facility, the inmate must have resided at his current facility for at least six months and have a six month disciplinary clear record.  Also, [the inmate's] health code and mental health code may be a factor taken into consideration for approval of [a] lateral transfer.

. . .

. . . [N]o . . . documentation has been received [at this time] from Inmate Alverson requesting employment at the Furniture Plant operated by [the] Alabama Department of Corrections.  Any and all requests made for employment by an inmate is thoroughly screened per criteria and scanned into the inmate's file.  The request for employment is documented as to whether the inmate has been approved for work placement or is ineligible with a copy returned to [the] inmate.  No such request has been made per inmate's file.

. . .

. . . [T]his Classification Specialist is aware of the imminent closure of Draper Correctional Facility; however, any and all inmate transfer movement [regarding Inmate Alverson] was coordinated via Institutional Coordinators and Transfer Agents.  Due to Draper Correctional Facility's imminent closure, all inmates are being screened and placed at approved facilities throughout the State as bed space becomes available.

. . . Inmate Alverson[] was transferred to Easterling Correctional Facility due to that facility being an approved, enemy free facility with available ben space. Inmate Alverson was transferred to Easterling Correctional Facility on January 26, 2018 along with at least 9 other inmates via Transfer Agents per [orders] of Institutional Coordinators. Strict criteria was used to screen each inmate before any transport occurred to another facility.  Retaliation, as stated by Alverson was not a guideline nor criteria for [his] transfer to Easterling Correctional Facility[.]

Doc. 34-3 at 2-5 (citations to attachment omitted); Doc. 34-2 at 1-2 (Aff. of Lorenzo Mills) (denies having any discussion with Alverson regarding this inmate's transfer and states he had no input with respect to such transfer because these decisions are made solely by institutional coordinators after consideration of all relevant factors).

As to the second motion for preliminary injunction requesting a reduction in the number of inmates housed at Easterling and an influx of correctional officers, Commissioner Dunn avers that the ADOC is "actively seeking to employ more correctional officers" and continually "working on solutions to [the ADOC's] issue of overcrowding which necessarily demands a lot of time and money." Doc. 36-1 at 1-2. Moreover, although overcrowding and understaffing exist at Easterling, these facts, standing alone, do not warrant issuance of preliminary injunctive relief as deliberate indifference by the defendants must also be shown. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (holding that officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (holding that a constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.").

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Alverson has failed to demonstrate a substantial likelihood of success on

the merits of the claims for which he seeks injunctive relief. In addition, with respect to the third factor – balancing potential harm to the parties – this factor weighs more heavily in favor of the defendants as issuance of the requested injunctions would substantially interfere with the ability of correctional officials to determine the manner in which to most effectively manage the transfer of inmates between correctional facilities and impede their ability to provide security throughout the prison system. Thus, under the circumstances of this case, the court concludes that Alverson has failed to meet his burden of demonstrating the existence of each prerequisite element necessary to warrant issuance of the requested preliminary injunctions.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motions for preliminary injunction filed by the plaintiff (Docs. 14 & 16) be DENIED.

2. This case be referred back to the undersigned for additional proceedings on the claims pending before the court.

On or before **June 11, 2018** the plaintiff may file objections to the Recommendation. Any objection must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive or general objections addressed to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 24th day of May 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE